# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAN CALLAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-CV-816-TCK-FHM |
| | ) | |
| COMMUNICATION GRAPHICS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss (Doc. 16). For reasons explained below, this motion is denied in its entirety.

## I. Procedural History

On December 26, 2013, Plaintiff filed a pro se Complaint asserting claims for "disability discrimination", "retaliation", and "sexual harassment." However, Plaintiff inadvertently completed a pro se complaint form for a 42 U.S.C. § 1983 claim, rather than a complaint form for employment discrimination. The Court construed Plaintiff's claims as arising under federal anti-discrimination laws and sua sponte dismissed them without prejudice based on Plaintiff's failure to plead exhaustion of administrative remedies. Rather than grant Plaintiff leave to amend, the Court terminated the case.

On February 20, 2014, Plaintiff filed a new case using the correct form and attaching his "right to sue" letter from the Equal Employment Opportunity Commission; however, the new filing was not filed within ninety days of Plaintiff's receipt of the letter. Upon its original dismissal, the Court intended Plaintiff to be able to re-file his case if he had indeed exhausted his administrative remedies and originally filed his federal lawsuit within ninety days of receipt thereof. Upon review of the new complaint, it was clear Plaintiff had done so. Although there are other methods by which

the Court could have exercised its equitable discretion to allow the second case to proceed, the Court decided to deem the Complaint in the new case as an Amended Complaint ("Amended Complaint") in the former case, found that the amendment related back to the original Complaint, and deemed the Amended Complaint timely filed.

## II. Factual Allegations and Construction of Claims

In the Amended Complaint, Plaintiff alleges that he worked for Defendant Communication Graphics for five years. During this time, he worked on a machine he called the "wrapper" and a machine called a "slitter." Plaintiff alleges that, at relevant times, he was managed by Mike Kinsch ("Kinsch"); he was supervised by Todd Canton ("Canton"); and he reported certain information to a human resources official named Lynn Peters ("Peters"). As explained above, Plaintiff labels his three claims as: (1) disability discrimination; (2) retaliation, and (3) sexual harassment. The Court has carefully examined the factual allegations under each heading to determine the nature of these claims, notwithstanding the labels used by Plaintiff. *See Castro v. United States*, 540 U.S. 375, 381-82 (2003) (explaining that "[f]ederal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion" in order to "avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a pro motion's claim and its underlying legal basis") (internal citations omitted).

A. **"Disability Discrimination"**[1]

In this claim, Plaintiff alleges that his co-workers, supervisors, and managers "mistook my Attention Deficit Order ["ADD"] symptoms for old age, alcoholism and mental illness and intentionally harassed me to make me sick." (Am. Compl., Doc. 5, at 3.) He was called old, senile, crazy, psychotic, and spaz. He alleges that this harassment was instigated by a safety manager named Jeff Bruner and caused him physical reactions including high blood pressure and a mild stroke. He further alleges that, after he reported this harassment, his supervisors did nothing to prevent the harassing behavior. The Court construes these facts as alleging only a hostile work environment claim, premised upon harassment Plaintiff suffered to the alleged disability of having ADD.[2]

---

[1] Plaintiff merely pled "disability discrimination" and did not specify the type of disability discrimination claim he asserts. The Americans with Disabilities Act ("ADA") "prohibits employment discrimination on the basis of an employee's disability, stating that '[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" 42 U.S.C. § 12112(a). This language encompasses a hostile work environment claim. *See Lanman v. Johnson Cnty., Kan.*, 393 F.3d 1151, 1156 (10th Cir. 2004) ("[W]e hold that a hostile work environment claim is actionable under the ADA."). It also encompasses a "failure to accommodate" claim. 42 U.S.C. § 12112(b)(5)(A) (ADA discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee"); *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 n.5 (10th Cir. 2004) (explaining that "failure to accommodate" is a separate theory of relief under the ADA with distinct elements from a wrongful termination claim).

[2] Plaintiff has not alleged any specific adverse employment action flowing directly from the ADD-based harassment. Therefore, if and to the extent these allegations attempt to assert a standard ADA discrimination claim, they fail based on Plaintiff's failure to assert facts that could establish the third element of a prima facie case. *See EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011) ("In order to demonstrate 'discrimination' under the third element of a prima facie case, a plaintiff generally must show that he has suffered an adverse employment action because of the disability.").

As a second aspect of this claim, Plaintiff alleges that, when he tried to report a work-related neck injury on or around April 12, 2011, Kinsch "tried to talk him out of it." (*Id.*) The next day, Kinsch and Canton told him three reasons he could be fired. Plaintiff alleges that they did this in order to prevent him from reporting his neck injury. Ten months later, Plaintiff finally saw a doctor for this injury, and the doctor placed him on restrictions. Plaintiff alleges that Defendant required him to do work against his restrictions, and then moved him from the wrapper to the slitter. Plaintiff alleges that the duties of the slitter did not comply with his restrictions and worsened his neck condition. Plaintiff then started hearing rumors that he would be fired, and he was fired two months later. The Court construes this claim as alleging that Defendant failed to provide a reasonable accommodation for the neck injury and/or terminated him because of the neck injury.

B.  **"Retaliation"**

With respect to his retaliation claim, Plaintiff alleges that after a couple of years of being harassed based upon his ADD symptoms, he complained to Kinsch, Canton, and Peters. Plaintiff claims that the harassment escalated, that he was excluded from production meetings, that Kinsch stopped considering him for employee of the month, and that he was terminated. He also alleges that Kinsch retaliated against him for not being able to perform his duties on the slitter following his reassignment. The Court construes these facts as alleging an ADA retaliation claim, premised upon the alleged disabilities of ADD and the neck injury.[3]

---

[3] Defendant's motion to dismiss assumes Plaintiff's retaliation claim arises under Title VII and treats this as a Title VII retaliation claim. However, the allegations indicate that the retaliation claim is premised upon complaints of harassment related to Plaintiff's ADD symptoms and neck injury, which is more aptly construed as retaliation based on opposition to practices made unlawful by the ADA.

Plaintiff further alleges that he was retaliated against because he "filed an accident report with workers' comp." The Court construes this as a separate state-law claim for workers' compensation retaliation.

**C.     "Sexual Harassment"**

In his third claim for relief, Plaintiff alleges:

> Besides the other types of discrimination I have mentioned, I was sexually harassed for about five years. This started out with about three people simulating homosexual sex acts around me and spreading rumors saying I was gay. I told Lynn [Peters] about some of this stuff around 8/16/10 and when I told her about something left at my work station calling me a fag, Todd [Canton] said they were only kidding. Lynn told me a few days later that the things that were said were not malecious. She said if your not happy here why don't you leave. The simulated homosexual acts all but stopped but within a month maybe as many as seven people started to pretending to play with themselves around me. This was done by co workers, supervisors and maybe a manager. I complained to Mike [Kinsch] and he said I have to live with people spreading rumors about me. This type of harassment also continued untill I was laid off. Besides these things Chris Darby touched me in a way that may have been a sexual assault or battery. I told Todd about this when it happened. Todd said he would have hit him. I don't think Todd reported this. I told Dave Cleveland (company president) and Lynn about some of these things in a deposistion around 7/5/12. They never asked me about any of the details and I was laid off a couple of weeks later.

(Am. Compl. at 4.) In his response to Defendant's motion to dismiss, Plaintiff further states that he believes "some of the people harassing [him] may have thought [he] was gay" and that he believes "four of the people that harassed [him] may be homosexual or bi-sexual." (Pl.'s Resp. to Def.'s Mot. to Dismiss, Doc. 17, at 3.)[4] He further alleges that Chris Darby "asked [him] to come to his house one time and on two or three occasions tried to show me pornography." (*Id.*)The Court construes

---

[4] Were Plaintiff to move to further amend the Amended Complaint to assert additional allegations in order to avoid dismissal, the Court would permit such amendment under Rule 15(c). In the interest of judicial economy and because Plaintiff appears *pro se*, the Court construes these statements in the response to the motion to dismiss as amendments to the pleading filed February 20, 2014.

5

this claim as alleging a sexually hostile work environment under Title VII and a Title VII retaliation claim premised upon Plaintiff's reporting the harassment to management.

### D. Court's Formulation of Claims

For the reasons explained above, the Court construes Plaintiff's factual allegations as asserting the following six claims: (1) ADA hostile work environment (based on disability of ADD); (2) ADA wrongful termination/failure to accommodate (based on disability of neck injury); (3) ADA retaliation; (4) state-law worker's compensation retaliation; (5) Title VII sexually hostile work environment; and (6) Title VII retaliation. The Court will address Plaintiff's claims in this manner, and the parties should do so in future filings.

### E. Defendant's Motion to Dismiss

In its motion to dismiss, Defendant argues that all claims are untimely because they were not filed within ninety days of Plaintiff's receipt of his right to sue letter. Defendant also argues that Plaintiff's claims fail to state any plausible claim for relief.[5]

## III. Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he mere metaphysical possibility that *some* plaintiff could

---

[5] Because Defendant did not construe Plaintiff's claims in precisely the same manner as the Court, Defendant did not specifically address all claims identified by the Court above. However, the Court has endeavored to address the arguments made by Defendant in support of its motion to dismiss in determining whether Plaintiff has stated any plausible claims for relief.

prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

**IV. Timeliness**

Defendant challenges the Court's ability to proceed in the manner described above and urges the Court to dismiss the case as untimely. Recognizing that the Court has already addressed the timeliness issue, Defendant argues that the Court erred in applying the relation back doctrine because Plaintiff's original lawsuit alleged civil rights violations under 42 U.S.C. § 1983 and because Defendant did not have an opportunity to be heard.

Defendant's arguments are unpersuasive. First, although Plaintiff used the wrong form, the Court construed the original Complaint as asserting employment discrimination claims. The factual

7

allegations in both the first and second complaint are similar if not identical and clearly assert discrimination by Plaintiff's former employer. Nothing in Plaintiff's allegations resemble a 42 U.S.C. § 1983 claim, and the Court does not hold *pro se* litigants to the same standards it would hold those represented by counsel. Notwithstanding use of the wrong form, there is no substantive difference between the first and second complaint. Second, the Court addressed the timeliness issue prior to Defendant being served due to the Court's obligation to screen *pro se* complaints pursuant to 19 U.S.C. § 1915(e)(2). Just as it was appropriate to dismiss the case without Defendant's participation, it was appropriate to address timeliness without Defendant's participation. In any event, Defendant has now been heard on timeliness, and the Court continues to believe it was within its equitable discretion to treat Plaintiff's *pro se* filings in the manner discussed above.

**V.    Failure to State a Claim**

    **A.    ADA Hostile Work Environment (ADD)**

Hostile work environment claims brought under the ADA are analyzed using the standards applied to similar claims brought under Title VII. *Lanman*, 393 F.3d at 1156 (explaining "parallel purposes and remedial structures" of Title VII and the ADA in holding that hostile work environment claim is actionable under ADA); *Campbell v. Wal–Mart Stores, Inc.*, 272 F. Supp. 2d 1276, 1292 (N.D. Okla. 2003) (applying Title VII standards to ADA hostile work environment claim). Extrapolating from Title VII, the elements of an ADA hostile work environment claim are: (1) the plaintiff is a member of a protected group, *i.e.*, he is "disabled" within the meaning of the ADA; (2) the plaintiff was subject to unwelcome harassment; (3) the harassment was based on the alleged disability; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working

environment. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (elements of sexually hostile work environment claim).

Defendant challenges the first element – whether Defendant is disabled. The Tenth Circuit has held that "ADD may constitute an impairment within the meaning of the [ADA]" and therefore may qualify as a disability if ADD limits at least one major life activity. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129-30 & n.3 (10th Cir. 2003). In order for such impairment to ultimately qualify as a disability, the ADD must have rendered Plaintiff "I) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.* at 1130 (quoting 29 C.F.R. § 1630.2(j)(1)).

Defendant argues that Plaintiff has not pled that ADD substantially limits any major life activity. However, the Court concludes that even under *Twombly* and *Iqbal*, a plaintiff is not required to provide particulars about the major life activity limited by the impairment or explain how the impairment limits that activity at the pleading stage. *See EEOC v. Burlington N. Santa Fe R.R.*, 2013 WL 1397130, at *7-8 (D. Kan. Apr. 5, 2013) (explaining that Tenth Circuit did not require this type of specific pleading in ADA cases prior to *Iqbal* and predicting that Tenth Circuit would follow Third Circuit's approach, which does not require a plaintiff "to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations" at the pleading stage) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213-14 (3rd Cir. 2009).

In his response to the motion to dismiss, which the Court has deemed an amendment to the Amended Complaint, Plaintiff states that he has been "treated by three doctors and a nurse practitioner for ADD on and off for more than fifteen years" and that this "learning disability has affected [him his] whole life . . . ." (Pl.'s Resp. to Def.'s Mot. to Dismiss, Doc. 17, at 2.) Plaintiff's allegations are sufficient to plausibly suggest that his mental impairment of ADD qualifies as a disability under the ADA.

### B. Failure to Accommodate/Wrongful Termination (Neck Injury)

In order to establish a prima facie case of disability discrimination – either based upon a failure to accommodate theory or discriminatory discharge theory – Plaintiff must first show that the neck injury is a disability under the ADA. *See Bartee*, 374 F.3d at 912 n.4 (first element of both types of claims requires a plaintiff to show that he is disabled within the meaning of the ADA). For the same reasons explained above, the Court concludes that Plaintiff need not plead with any particulars the major life activities impacted by the neck injury. Plaintiff has alleged that he has seen numerous doctors regarding this injury and may have as many as four herniated disks in his neck. It is at least plausible that Plaintiff will be able to produce doctor's records or other evidence showing that this physical impairment substantially limited a major life activity.

Further, Plaintiff alleges that, once notified of the neck injury, Defendant initially threatened to fire him. Once Plaintiff finally did see a doctor, Defendant moved him to a position on the slitter that did not accommodate the injury. Plaintiff also claims he was terminated less than two months after being transferred to that position, where he was allegedly unable to perform his duties. This is sufficient to make it plausible that Plaintiff may be able to satisfy the remaining two elements for

each type of disability discrimination claim. *See Bartee*, 374 F.3d at 912 n.4 (setting forth elements of ADA wrongful termination and failure to accommodate claims).

### C. ADA Retaliation

A prima facie case of retaliation under the ADA requires: "(1) that [an employee] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *EEOC v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012).

Plaintiff's allegations are sufficient to state a plausible claim for ADA retaliation with respect to his report of a hostile work environment related to his ADD symptoms. Plaintiff alleges that he complained to Kinsch, Canton, and Peters about the hostile work environment. Assuming ADD is found to qualify as a disability and that the harassment was because of the disability, this could potentially qualify as a complaint about ADA discrimination. He further alleges that, based on these reports, Kinsch began excluding him from certain meetings, failing to provide him with certain reports, and preventing him from being considered for certain monetary rewards, which could at least plausibly satisfy the second and third elements.

Plaintiff's allegations are also sufficient with regard to complaints about his neck injury. Plaintiff alleges that Kinsch terminated him two months after he complained about being moved to a position that violated certain doctor's restrictions related to his neck injury. This could plausibly be determined to be protected opposition to ADA discrimination, followed by an adverse employment action, which states a plausible claim for ADA retaliation.

### D. State-Law Workers' Compensation Retaliation

Defendant has not addressed the workers' compensation retaliation claim in any meaningful manner. Defendant simply argued that filing a worker's compensation claim does not qualify as protected opposition to discrimination made unlawful by Title VII. In the Court's view, Plaintiff has alleged facts that potentially invoke a state-law claim for workers' compensation retaliation and not merely Title VII retaliation. Therefore, such claim will proceed at this juncture.

### E. Sexually Hostile Work Environment - Title VII

The elements of a sexually hostile work environment claim are: (1) the plaintiff is a member of a protected group; (2) the plaintiff was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *See Harsco Corp.,* 475 F.3d at 1186. Defendant argues that Plaintiff's allegations cannot satisfy the third element – namely, that the harassment he endured was because of his gender as a male.

Same-sex sexual harassment is actionable under Title VII, but it is more difficult for a plaintiff to prove the third element – namely, that the harassment was "because of sex." *James v. Platte River Steel Co.*, 113 Fed. App'x 864, 866 (10th Cir. 2004). This is "because there are important differences between same-sex and opposite-sex discrimination cases in terms of the inferences that can be drawn from a harasser's conduct" and because the inference of explicit or implicit proposals of sexual activity are "not as easy to draw in a same-sex case." *Id.* Due to this difficulty, the Tenth Circuit has outlined some possible (although not exclusive) evidentiary routes by which a plaintiff can prove that the conduct was not merely tinged with offensive sexual

connotations but was actually discrimination because of the plaintiff's sex. *Id.* Such possible routes include showing: (1) the harasser was homosexual and motivated by sexual desire; (2) the harassment was framed in sex-specific and derogatory terms making it clear that the harasser was motivated by hostility to the presence of the plaintiff's gender in the workplace; (3) direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace; and (4) the harasser's conduct was motivated by a belief that the plaintiff did not conform to the stereotypes of his or her gender. *Id.* at 867 (adopting first three methods from *Oncale v. Sundowner Offshore Svcs., Inc.*, 523 U.S. 75, 80 (1998), and fourth from *Bibby v. Philadelphia Coca-Cola Bottling Co.*, 260 F.3d 257, 262-63 (3d Cir.2001)).

Defendant argues that Plaintiff's allegations cannot plausibly satisfy the "based on sex" element and instead merely describe rude and offensive behavior. The Court disagrees. In the Amended Complaint and his response to the motion to dismiss, Plaintiff alleges that he suffered an unwelcome touching that "may have been a sexual assault or battery" by a male co-worker, and that the same co-worker showed him pornography and invited him to his house. This raises an inference that this harasser was homosexual and/or motivated by sexual desire. Plaintiff also explicitly alleges that he believes that some of his harassers were homosexual or bisexual. Accepting these facts as true, it is at least plausible that Plaintiff could satisfy the third element requiring the harassment to be because of his sex.

### F. Title VII Retaliation

Title VII makes it unlawful for an employer to retaliate against an employee for participating in certain protected activity, including opposing discrimination. 42 U.S.C. § 2000e-3(a). To make out a prima facie case of Title VII retaliation, Plaintiff must show (1) he engaged in protected

13

opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013).

Plaintiff has alleged that he reported the same-sex harassment to Peters and Defendant's President, Dave Cleveland, on or around July 5, 2012. According to Plaintiff, they "never asked him about any of the details" and he was terminated two weeks later. (Am. Compl. at 3.) These allegations are sufficient to state a plausible claim for Title VII retaliation.

## VI. Conclusion

Defendant's Motion to Dismiss (Doc. 16) is DENIED.

**SO ORDERED this 12th day of December, 2014.**

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**